UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

CASE NO.: 6:25-cv-335

STEEL CITY INDUSTRIES, INC.,

 Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

 Defendants.
_____/

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS**
**_EX PARTE_ MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER**

Plaintiff, Steel City Industries, Inc. ("Plaintiff"), by and through its undersigned counsel and in accordance with this Court's instructions during the September 26, 2025 Case Management Conference,[1] hereby submit the following Supplemental Memorandum of Law in further support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order.

**MEMORANDUM OF LAW**

**I. A District Court May Use Its Equitable Powers to Freeze Assets on an *Ex Parte*
Basis If the Underlying Statute Does Not Preclude the Remedy.**

"The Supreme Court has dictated that, unless the underlying statute clearly and validly limits the equitable jurisdiction of the district court, 'all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction.'" *AT&T*

---

[1] Specifically, during the Case Management Conference, the Court granted Plaintiff leave to file a supplemental memorandum discussing prior circuit court of appeals opinions holding that a district court is authorized to enter a temporary restraining order freezing a defendant's assets on an *ex parte* basis. Accordingly, the authority discussed herein is narrowly limited to appellate court review of *ex parte* orders issued without notice.

*Broadband v. Tech Comm., Inc.*, 381 F.3d 1309, 1316 (11th Cir. 2004) (quoting *Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 1089-90 L.Ed. 1332 (1946)). "In other words, '[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.'" *Id.* "Moreover, when 'the public interest is involved ..., [the district court's] equitable powers assume an even broader and more flexible character.'" *Id.*

In *AT&T Broadband*, the appellee sought an *ex parte* restraining order freezing the defendant's assets after discovering the defendant was selling pirate cable descramblers in violation of Section 553 of the Cable Communications Policy Act ("CCPA"). *AT&T Broadband*, 381 F.3d at 1311. Upon considering similar cases from the Third and Seventh Circuits and considering the strong public interest in deterring the defendant's conduct, the Eleventh Circuit Court of Appeals held that the *ex parte* asset freeze was an "appropriate equitable remedy" to prevent future violations of the CCPA. *Id*. at 1316-17 (citing *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 996 (7th Cir. 2002); *TKR Cable Co. v. Cable City Corp.,* 267 F.3d 196, 208 n. 4 (3d Cir. 2001); *General Instrument Corp. of Del. v. Nu–Tek Elecs. & Mfg., Inc.,* 197 F.3d 83, 90–91 (3d Cir. 1999)).[2]

---

[2] Notably, the appellant in *AT&T* argued that an *ex parte* seizure was impermissible because "when Congress wants to authorize this type of relief, they do explicitly, as in the Lanham Act 15 U.S.C. § 1116, which directly states that district courts may issue *ex parte* seizures." *AT&T Broadband*, at 1318. The Eleventh Circuit disagreed with this argument and concluded that an *ex parte* seizure, while even more drastic than an *ex parte* asset freeze, was "an appropriate equitable remedy to protect the Congressional intent of the CCPA." *Id*. Here too, a less drastic asset freeze will best accomplish Congressional intent to protect U.S. intellectual property rights from foreign infringers. As recognized in *AT&T*, when intellectual property rights owners seek an *ex parte* seizure order, Congress made clear that a seizure *must* be done without notice to the defendant. *See* 15 U.S.C. § 1116(d)(4)(B)(vii). A less severe asset freeze undoubtedly comports with Congressional intent.

## II. Circuit Courts of Appeals, Including the Fifth Circuit, Routinely Affirm Orders Freezing Assets Without Notice.

In *U.S. v. Holy Land Foundation for Relief and Development*, 493 F.3d 469 (5th Cir. 2007), the plaintiff obtained an *ex parte* restraining order indefinitely freezing the defendant's assets under the criminal forfeiture statute, 21 U.S.C. § 853, following indictment that the defendant purportedly operated as a terrorist fundraiser. *Id.* at 470. Analyzing Supreme Court and Circuit Court decisions addressing due process requirements within the same statutory framework, the Fifth Circuit held that when the government seeks forfeiture of assets and secures an indictment to that effect based on probable cause, a district court "may issue a restraining order ***without prior notice or a hearing***." *Id.* (emphasis added).

In *U.S. v. Jenkins*, 974 F.2d 32 (5th Cir. 1992), the plaintiff obtained an *ex parte* restraining order pursuant to 18 U.S.C. § 1963(d), prohibiting the defendants from "selling, assigning, transferring, encumbering or removing from the jurisdiction of the court any assets owned by or owed to them." *Id.* at 33. Affirming the district court, the Fifth Circuit noted that in applying *ex parte* for the order at issue, the plaintiff asserted that it might suffer irreparable harm if the order was not entered because the defendants or their agent might "sell, alienate, encumber, transfer or otherwise place the above-described property beyond forfeitable condition and thereby frustrate the ends of public justice." *Id.* at 35. The district court further noted it was entering the restraining order "to assure that the defendants, and their agents, servants, employees, attorneys and those in active concert or participation with them, do not place certain property beyond the jurisdiction of this Court or otherwise detrimentally affect the Government's interest in such property, thereby frustrating the ends of justice and causing irreparable harm to the United States, by defeating the jurisdiction of this Court over such property." *Id.*

3

In *Dexia Credit Local v. Rogan*, 602 F.3d 879 (7th Cir. 2010), plaintiff moved for an *ex parte* restraining order to freeze defendant's assets in connection with a diversity action based on fraud and conspiracy claims. *Id.* at 881. The district court granted the restraining order without notice concluding that there was good cause to believe that the defendant would dispose of the assets for the benefit of a co-defendant. *Id*. at 882. The Seventh Circuit affirmed the district court's orders and held that the defendant was "not entitled to evidentiary hearing prior to entry of injunction." *Id.* at 880.

In *EM Ltd. v. Republic of Argentina*, 389 Fed.Appx. 38, 40 (2d Cir. 2010), the Second Circuit affirmed the district court's *ex parte* order restraining and attaching certain assets of the appellant in a trust being administered by a third party. *Id.* at 40; *see also U.S. v. Gormley*, 176 F.3d 476, 1999 WL 212008 at *1 (4th Cir. 1999) (affirming district court order denying motion to vacate *ex parte* order restraining all of defendant's assets with the exception of ordinary living expenses); *U.S. v. Friedman*, 143 F.3d 18, 22-24 (1st Cir. 1998) (affirming *ex parte* order seizing net proceeds from the sale of defendant's condominium); *United States Securities and Exchange Commission v. Young*, Nos. 21-1061, 21-1075 & 21-1322, 2022 WL 2977080, at *1 (10th Cir. 2022) (affirming preliminary injunction order converted from *ex parte* temporary restraining order freezing defendant's assets).

**III.     In *Reebok International*, the Ninth Circuit Affirmed a Restraint of Assets Under Circumstances Similar to the Matter at Hand.**

Like the matter at hand, *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552 (9th Cir. 1992), also involved alleged violations of the plaintiff's intellectual property rights. In *Reebok*, the plaintiff alleged that defendant sold counterfeit REEBOK shoes and that these sales detracted from purchases of legitimate REEBOK merchandise. *Id.* at 554. Accordingly, the

plaintiff moved for an *ex parte* temporary restraining order and a seizure of the defendant's assets which the district court granted and subsequently converted into a preliminary injunction. *Id.*

On appeal, the Ninth Circuit noted that, while Fed. R. Civ. P. 65 was the procedural vehicle for granting the *ex parte* order and subsequent preliminary injunction, the authority for the requested relief must arise separately. *Reebok Intern., Ltd.*, 970 F.2d at 558. In *Reebok*, the Ninth Circuit held that Section 1116 of the Lanham Act undisputedly authorized the district court to enjoin continued infringement of the plaintiff's trademarks and further noted that Section 1116 "might authorize a prejudgment freeze of a defendant's assets if such an action were necessary to protect a plaintiff's right to recovery of § 1117 profits and damages and to ensure that a defendant may not benefit by willfully engaging in illegal trademark activity." *Id.* at 558-59.

The Ninth Circuit, however, did not determine whether the Federal Rules of Civil Procedure or the Lanham Act itself authorized the prejudgment asset freeze because, "regardless of the scope of those provisions, ***the injunction is authorized by the district court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief***." *Reebok Intern., Ltd.*, 970 F.2d at 559 (emphasis added). The Ninth Circuit further elaborated as follows:

> We have held previously that "[a] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies." [Internal citations omitted]. Because "it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement," *Playboy Enterprises,* 692 F.2d at 1275, district courts must implement fully the requirement of 15 U.S.C. § 1117(a) that "[w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office ... shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled ... subject to the provisions of equity, to recover (1) defendant's profits...." [Internal citations omitted]. Because the Lanham Act authorizes the district court to grant Reebok an accounting of Betech's profits as a form of final equitable relief, the district court had the inherent power to freeze Betech's assets in order to ensure the availability of that final relief. As in *Marcos,* "[t]he injunction here enjoins the defendants from

5

secreting those assets necessary to preserve the possibility of equitable relief." [*Republic of the Philippines v.*] *Marcos,* 862 F.2d [1355] at 1364 [(9th Cir. 1988)]. ***The injunction issued in Reebok II was designed to preserve the possibility of an effective accounting of Betech's profits and the return of profits fraudulently obtained: that objective is permissible and within the power of the district court.*** [Internal citations omitted and emphasis added].

*Id.* at 559-60.

### IV. The Second Circuit Reversed a District Court's Refusal to Enter an *Ex Parte* Temporary Restraining Order to Combat Intellectual Property Infringement

Although technology has evolved, and the marketplace for infringers has expanded from a strictly physical forum to an internationally reaching online forum, the Second Circuit long ago recognized that *ex parte* temporary restraining orders under Rule 65 can be a necessary tool for intellectual property owners combating infringement. In *Matter of Vuitton et Fils S.A.*, 606 F.2d 1 (2d Cir. 1979), Louis Vitton applied for an *ex parte* order "to maintain the status quo, namely the defendants' inventory of counterfeit Vuitton merchandise" because "by the time this Court entered an order [with notice], most if not all of the merchandise would have been removed from the premises." *Vuitton*, 606 F.2d at 3. The district court denied the application, but the Second Circuit reversed with instructions "to grant an appropriate Ex parte Temporary restraining order pursuant to Fed.R.Civ.P. 65(b), narrow enough and of brief enough duration to protect the interests of the defendants, the precise terms of which shall be determined by the district court." *Id*.

The Second Circuit reviewed the Supreme Court's constraints on issuing *ex parte* orders under *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974), as well as the Second Circuit authority at the time, and reiterated that although the Second Circuit had historically "frowned upon temporary restraining orders issued without even telephoned notice, there are occasions when such orders are to be countenanced." *Vuitton*, at 4. The Second Circuit agreed with Vuitton that this was one such instance because "[i]f notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action[, which] is precisely

contrary to the normal and intended role of notice, and it is surely not what the authors of the rule either anticipated or intended." *Id*., at 4.³

In the matter at hand, like the Lanham Act in *Reebok* and *Vuitton*, the Patent Act also authorizes courts to issue injunctive relief "in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. More importantly, like the Lanham Act, under the Patent Act Plaintiff will also be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their infringing conduct. *See* 35 U.S.C. § 289. Pursuant to the authority cited herein, Plaintiff's requested restraint of assets is designed to preserve the possibility of an effective accounting of Plaintiff's profits and the return of profits obtained by the Defendants. This objective is permissible and within the broad equitable powers of this Court.

Date: September 29, 2025

Respectfully submitted by,

THE BRICKELL IP GROUP, PLLC
1101 Brickell Avenue
South Tower, Suite 800
Miami FL, 33131
Tel: 305-728-8831
Fax: 305-428-2450

*/s/ A. Robert Weaver*
A. Robert Weaver
Fla. Bar No. 92132
Email: rweaver@brickellip.com

*Counsel for Plaintiff*

---

³ An Eastern District of Texas court recently cited *Vuitton* in support of its authority to enter an *ex parte* asset freeze involving addresses holding cryptocurrency. *See Cohn v. Popescu*, No. 1:24-cv-337, 2025 WL 1782556, at *3 (E.D. Tex. May 29, 2025).