**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **STEEL CITY ENTERPRISES, INC.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| **THE INDIVIDUALS,** | § | **6:25-cv-00335-LS** |
| **PARTNERSHIPS AND** | § | |
| **UNINCORPORATED** | § | |
| **ASSOCIATIONS IDENTIFIED ON** | § | |
| **SCHEDULE "A,"** | § | |
| | § | |
| *Defendants*. | § | |

**ORDER DENYING SEALED MOTIONS Nos. 6 and 7**

Steel City sues for patent infringement sixty-four foreign defendants, listed on a separately filed and sealed "Schedule A," most of which are Chinese. The docket reflects no requests for summons for any defendant, nor completed service on any defendant. It also reflects that Plaintiff has sought no early discovery regarding the defendants' true identities and contact information.

This is a classic "Schedule A" case. The Northern District of Illinois was the epicenter of "Schedule A" cases until certain judges in that district began pushing back against the extraordinary relief that plaintiffs were obtaining, usually with no support in the Federal Rules of Civil Procedure. Judge Kness in that district described the typical Schedule A case:

> Schedule A litigation commences when a plaintiff files a single case with a voluminous list of defendants attached as a separate document (the so-called "Schedule A" to the complaint). In the paradigmatic case, the Schedule A plaintiff uses this maneuver to assert IP rights against a mass of anonymous and (most often) foreign defendants, who operate stores on popular e-commerce sites and allegedly sell infringing or counterfeit products. Schedule A complaints ordinarily are drafted at a high level of generality (bordering on boilerplate) and lack specifics as to each defendant or how the defendants relate to one another. Schedule A cases are also typically brought on an ex parte basis and are accompanied by (1) a motion seeking

an emergency TRO against the allegedly infringing behavior; (2) a request for a prejudgment asset restraint; (3) a motion to keep a portion, or even all, of the proceedings sealed; and (4) a motion for electronic service of process.[1]

**1. *Ex Parte* Seizure of Defendants' Assets Based on Sealed Documents Without Notice [Doc. No. 7].**

In this case, as in all Schedule A cases, Plaintiff seeks an *ex parte* order freezing Defendants' financial assets based on sealed documents, before service of process is even requested, much less effected, and without notice. The Northern District of Illinois' Judge Seeger best explains why such requests are unwarranted:

> But in Schedule A cases, the plaintiffs' bar typically seeks remedies at law - such as statutory damages - not equitable monetary relief. The request for a remedy at law, not a remedy in equity, affects the calculus when it comes to an asset freeze.
>
> The Supreme Court has made clear that courts lack the power to issue an asset freeze at the beginning of a case, unless that party is seeking equitable monetary relief. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S. Ct. 1961, 144 L. Ed. 2d 319 (1999). In *Grupo Mexicano*, the Supreme Court held that a district court has "no authority to issue a preliminary injunction preventing [a defendant] from disposing of their assets pending adjudication of [plaintiff's] contract claim for money damages." *Id*. at 333.
>
> The Supreme Court reinforced the long-standing rule that "a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." *Id*. at 321. "[A]s a general matter [] prejudgment asset restraints are not proper simply to establish a fund from which a later award of money damages can be satisfied." *See Banister v. Firestone*, 2018 U.S. Dist. LEXIS 151180, 2018 WL 4224444, at *9 (N.D. Ill. 2018).
>
> An equitable restraint on day one might be doable if a plaintiff requested and received equitable monetary relief at the end of the case, like restitution or disgorgement of ill-gotten gains. *See Deckers Outdoor Corp. v. Unincorporated Associations Identified on Schedule A*, 2013 U.S. Dist. LEXIS 205985, 2013 WL 12314399 (N.D. Ill. 2013); *see also* 1 D. Dobbs, Law of Remedies § 4.1(1) (2d ed. 1993) ("Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain. It differs in its goal or principle from damages, which measures the remedy by the plaintiff's loss and seeks to provide compensation for that loss.").

---

[1] *Eicher Motors Ltd v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 794 F. Supp. 3d 543, 546-47 (N.D. Ill. 2025) (citations omitted).

2

But as a practical matter, in Schedule A cases, that recovery almost never happens. Schedule A plaintiffs typically don't request and receive equitable monetary relief.

Instead, Schedule A plaintiffs rush into court, request and receive an asset freeze, and obtain a default judgment. And then, the Schedule A plaintiffs ask district courts to unfreeze the money and award statutory damages, not equitable relief. In that scenario, it is not clear to this Court that it would be appropriate to use any frozen funds for any recovery of statutory damages, because statutory damages are a remedy at law, not a remedy in equity.

Truth be told, the Schedule A plaintiffs' bar asks courts in this district to lock down assets through an asset freeze on day one of a case, and do so under seal. And then, at the end of the case, Schedule A plaintiffs simply ask the Court to bless an order requiring third parties to hand over all of the frozen funds. The Schedule A plaintiffs receive a remedy at law, not a remedy in equity, which means that there was no justification for an asset freeze in the first place.[2]

Plaintiff in this case seeks actual and statutory damages,[3] presumably to be satisfied out of Defendants' frozen funds – the very problem Judge Seeger identified. Most problematic, though, is that Plaintiff concedes in its motion to seal "Schedule A" that it does not know Defendants' true "names or other personal information." To obtain a TRO's extraordinary relief, a movant must demonstrate: (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.[4] And to obtain a TRO *ex parte* without notice to the affected party, the movant must show that (1) immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney must certify in writing any efforts made to give notice and the reasons why it should not be required.[5]

---

[2] *Zorro Productions, Inc. v. Individuals*, 2023 U.S. Dist. LEXIS 226550, *9-11, 2023 WL 8807254 (N.D. Ill. Dec. 20, 2023).

[3] ECF No. 1 at 13.

[4] *Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015).

[5] Fed. R. Civ. P. 65(b).

Because a TRO is extraordinary relief, especially when sought *ex parte* without notice to the affected party, the Court denies the relief Plaintiff seeks. The Court will not order the wholescale freezing of Defendants' financial assets, *ex parte* and without notice, based on sealed documents, *when Plaintiff does not know Defendants' true identities or personal information.* Moreover, the onus on asset-freezing selection would ostensibly be on third-party Amazon, who unwittingly or unintentionally might mistakenly freeze the financial assets of innocent entities as it tries to comply with this Court's freezing order - at conceivably catastrophic cost to innocent parties. The Federal Rules of Civil Procedure, and due process, do not begin to contemplate the relief Plaintiff seeks in this regard.

**2. Electronic Service [Doc. No. 6]**

Plaintiff seeks electronic service on all Defendants, whose true identities are unknown, some of whom are individuals and some of whom are business entities, and who may be citizens of China, Armenia, Hong Kong, and Vietnam.

As an initial matter, Plaintiff does not appear to have requested summons for or tried to effect service on *any* party. As for methods of service overseas, Rule 4 provides for foreign individuals:

> (f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

4

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

(i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.[6]

Rule 4 provides for service on overseas corporations "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."[7] Overseas service on both individuals and corporations, then, depends on country-specific service agreements and country-specific service laws and/or requirements. The Court cannot conduct its independent and requisite analysis of the need for electronic service on each defendant based on Plaintiff's omnibus motion for electronic service on *all* defendants, devoid of reference to the relevant country-specific service agreements, laws, and requirements. The Court requires more than Plaintiff's citations to district court opinions to conduct its own independent analysis, especially when Plaintiff has sought no discovery to learn Defendants' true identities and respective citizenships.

Plaintiff's motions in Doc. Nos. 6 and 7 are **DENIED**.

**SO ORDERED.**

---

[6] Fed. R. Civ. P. 4(f).
[7] Fed. R. Civ. P. 4(h)(2).

**SIGNED** and **ENTERED** on March 28, 2026.

**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**